IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN F. STRAKA,                     No.  CIV.S-05-1124 DAD

     Plaintiff,

  v.                                  <u>ORDER</u>

JO ANNE B. BARNHART,
Commissioner of Social
Security,

     Defendant.
_____/

       This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for judgment on the pleadings and defendant's cross-motion for summary judgment. For the reasons explained below, the decision of the Commissioner of Social Security ("Commissioner") is reversed and this matter is remanded with the direction to grant benefits.

                                **PROCEDURAL BACKGROUND**

       Plaintiff John Francis Straka applied for Disability Insurance Benefits under Title II of the Social Security Act (the

1

"Act").  (Transcript ("Tr.") at 62-64.)  The Commissioner denied plaintiff's application initially and on reconsideration.  (Tr. at 49-52, 55-58.)  Pursuant to plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on October 8, 2003, at which time plaintiff was represented by counsel.  (Tr. at 184-94.)  In a decision issued on January 21, 2004, the ALJ determined that plaintiff was not disabled.  (Tr. at 32-40.)

        Pursuant to plaintiff's request, the Appeals Council reviewed the ALJ's decision and remanded the matter for further administrative proceedings.  (Tr. at 142-44.)  Another administrative hearing was held before the same ALJ on February 7, 2005, at which time plaintiff was represented by the same counsel.  (Tr. at 195-227.)  In a decision issued on March 15, 2005, the ALJ again determined that plaintiff was not disabled.  (Tr. at 11-22.)  The ALJ entered the following findings in this regard:

    1.   The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

    2.   The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

    3.   The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).

    4.   These medically determinable impairments do not meet or medically equal one of the listed impairments in

/////

2

|   |   |   |
|---|---|---|
| | | Appendix 1, Subpart P, Regulation No. 4. |
| | 5. | The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision. |
| | 6. | The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527). |
| | 7. | The claimant has the residual functional capacity undersigned finds the claimant has the residual functional capacity for work at all levels of exertion (sic).  He is blind in his left eye.  He has moderate limitations in the ability to identify and carry out simple job instructions, interact with co-workers and respond approximately (sic) to changes in the work place. |
| | 8. | Based on the testimony of the vocational expert, the claimant is able to perform his past relevant work as an insurance broker (20 CFR § 404.1565). |
| | 9. | The claimant's is an "individual closely approaching retirement age" (20 CFR § 404.1563.) |
| | 10. | The claimant has "more than a high school (or high school equivalent) education" (20 CFR § 404.1564). |
| | 11. | The claimant's has transferrable skills from his past relevant work. |
| | 12. | Considering the types of work which the claimant is still functionally capable of performing in combination with his age, education and work experience, he can be expected to make a vocational adjustment to work which exists in significant numbers in the national economy.  In addition to his past work, |

3

>     the vocational expert testified that
>     these jobs included employment as a
>     janitor, dishwasher, auto detailer,
>     fast food worker, photo clerk and a
>     parking lot attendant.
>
> 13. The claimant was not under a
>     "disability," as defined in the Social
>     Security Act, at any time through the
>     date of this decision (20 CFR §
>     404.1520(f).)

(Tr. at 21-22.)  The ALJ's decision became the final decision of the Administration when the Appeals Council declined review on May 26, 2005.  (Tr. at 6-9.)  Plaintiff then sought judicial review, pursuant to 42 U.S.C. § 405(g), by filing the complaint in this action on June 6, 2005.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (Substantial evidence "is more than a mere scintilla but not necessarily a preponderance.")

4

1        A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

       In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is conclusively presumed disabled.  If not, proceed to step four.

/////

>Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
>Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in the first four steps of the sequential evaluation.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff advances numerous arguments in his motion for judgment on the pleadings.  The court addresses these arguments below to the extent necessary.

One of plaintiff's main arguments is that the ALJ failed to properly credit the opinion of Timothy Canty, M.D., an examining psychiatrist who evaluated plaintiff on October 22, 2004.  (Tr. at 150-56.)  Where the opinion of an examining physician is uncontradicted by the opinion of another doctor, the ALJ must provide "clear and convincing" reasons for rejecting it.  See Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Lester, 81 F.3d at 830.  Where an examining physician's opinion is contradicted by that of another doctor, it can be rejected upon a showing of "specific and legitimate reasons that are supported by substantial evidence in the record." Id.  Here, there is disagreement between the parties regarding

6

whether the opinion of Dr. Canty is "uncontradicted," such that the ALJ was required to set forth "clear and convincing" reasons in rejecting it, or "contradicted," such that "specific and legitimate" reasons based on substantial evidence were sufficient to reject it. The court finds that the ALJ's treatment of the opinion of the examining psychiatrist does not withstand scrutiny under either standard.

After examining plaintiff, Dr. Canty offered the following DSM-IV diagnosis:

> Axis I:   Adjustment disorder with
>           depressed mood, chronic;
>           History of alcohol abuse in
>           remission for 22 years
>
> Axis II:  None
>
> Axis III: Multiple physical complaints
>
> Axis IV:  Chronic moderate to severe
>
> Axis V:   60

(Tr. at 152.)  Dr. Canty then assessed plaintiff as follows:

> He is able to handle his money.  From an
> emotional standpoint he would likely be able to
> do simple, repetitive tasks for short periods but
> I suspect his overall irritability would prevent
> him from being productive for a full workday.
> Given his irritability he would not do well in a
> public job.  His mood symptoms would on some days
> interfere with attending but probably not on most
> days.  Overall, his mood and irritability would
> most likely prevent consistent, productive work.
> His main complaints center on his vision and the
> limitations it has caused.

(Tr. at 153.)  On a medical-source statement accompanying his typed report, Dr. Canty indicated that plaintiff is moderately to markedly

7

impaired in numerous work-related mental activities and extremely impaired in his ability to interact appropriately with the public. (Tr. at 154-55.)

The ALJ rejected Dr. Canty's opinion because, according to the ALJ, it was a result of Dr. Canty giving "great weight to the claimant's subjective complaints." (Tr. at 18.) However, that is not a legitimate reason for rejecting Dr. Canty's report. This is not a situation, as the ALJ suggested, where Dr. Canty simply reiterated plaintiff's subjective complaints and concluded that plaintiff was disabled. Rather, Dr. Canty examined plaintiff, took his history, rendered a formal diagnosis, gave a prognosis and made a functional assessment. Cf. Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005)(affirming rejection of physician's opinion set forth in a "To Whom it May Concern" letter which listed plaintiff's subjective complaints and "did not even purport to opine as to the existence of an impairment for purposes of obtaining Social Security benefits"). Further, as explained below, the ALJ failed to properly evaluate plaintiff's credibility. Cf. Morgan, 169 F.3d at 602 ("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'"). Here, the ALJ erred in rejecting Dr. Canty's opinion on the grounds that it was based merely on plaintiff's "subjective complaints."

In failing to give adequate weight to Dr. Canty's opinion, the ALJ also stated that "Dr. Canty's mental status exam was

unremarkable." (Id.)  That is not an accurate characterization of the record.  It is true that plaintiff was well-groomed, cooperated with the physician and oriented to time and place.  (Tr. at 151.)  However, Dr. Canty also noted that plaintiff reported becoming "quite angry at times" and as having a "great deal of difficulty adjusting to his limitations and to the losses that he has experienced."  (Id.)  Dr. Canty cited plaintiff's irritability as the primary reason underlying plaintiff's work limitations.  (Tr. at 154-55.)

The ALJ also explained that "treating records indicate improvement in the claimant's depressive symptoms after he started medications."  (Tr. at 18.)  However, no specific medical record is cited by the ALJ in connection with that statement and it is not supported by the record.  Indeed, as of April and May, 2003, at least one physician wanted plaintiff to try another anti-depressant medication, presumably because earlier anti-depressants were ineffectual.  (Tr. at 157, 163.)  Moreover, a report written in 2004 by Dr. Canty indicates that "numerous psychiatric medications" provided plaintiff no significant relief."  (Tr. at 150.)

In discounting Dr. Canty's opinion, the ALJ also stated that plaintiff "has not sought treatment complaining of difficulty being around others, difficulty performing task[s], or other symptoms secondary to poor mood and irritability."  (Tr. at 18.)  Here again, the ALJ mischaracterized the record.  In fact, such complaints by plaintiff are reflected in Dr. Canty's report.  (Tr. at 151.)  Further, while the administrative record does not contain extensive treatment notes, plaintiff complained of symptoms associated with

depression to at least two treating physicians. (Tr. at 157-59, 163, 165.)  Finally, the Ninth Circuit has indicated that "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'"  Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)(quoting Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).  See also Newell v. Commissioner, 347 F.3d 541, 547 (3rd Cir. 2003).  Therefore, the ALJ erred in rejecting Dr. Canty's opinion due to the extent of mental health treatment received by plaintiff.

Finally, the ALJ relied on the fact that Dr. Canty rendered a GAF ("Global Assessment of Functioning") score of 60 with respect to plaintiff.  (Tr. at 152.)  According to the DSM-IV, a GAF of 51-60 is indicative of the following: "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).  However, a GAF score alone is not a sufficient reason to reject the ultimate conclusions of Dr. Canty, conclusions which are supported by his independent examination of plaintiff and the detailed discussion in Dr. Canty's report.

For all of these reasons, the court finds that the ALJ erred in his treatment of the opinion of Dr. Canty, the examining psychiatrist.  Reversal therefore is required.

Plaintiff also persuasively argues that the ALJ erred in evaluating plaintiff's own testimony regarding the severity of his

symptoms and the resulting limitations those symptoms place upon him. It is well-established that the determination of credibility is a function of the ALJ, acting on behalf of the Commissioner. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). An ALJ's assessment of credibility should, in general, be given great weight. Nyman v. Heckler, 779 F.2d 528, 530-31 (9th Cir. 1985). Thus, questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner. Morgan, 169 F.3d at 599. In evaluating a claimant's subjective testimony regarding pain and the severity of his or her symptoms an ALJ may consider the presence or absence of supporting objective medical evidence along with other factors. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness. See Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

Nonetheless, an ALJ's rejection of a claimant's testimony must be supported by specific findings. Morgan, 169 F.3d at 599; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993)(citing Miller, 770 F.2d at 848). Once a claimant has presented evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of his or her symptoms merely because the testimony is unsupported by objective medical evidence. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Chater, 119 F.3d 789, 792

1  (9th Cir. 1997).  Rather, "the ALJ can reject the claimant's
2  testimony about the severity of [his or] her symptoms only by
3  offering specific, clear and convincing reasons for doing so."
4  Light, 119 F.3d at 792.  See also Reddick, 157 F.3d at 722.
5         Here, it is clear that plaintiff's medical records document
6  conditions regarding plaintiff's eyes and mental health which might
7  reasonably be expected to cause the symptoms alleged by plaintiff.
8  The ALJ found plaintiff's statements regarding the impact of his
9  impairments on his ability to work to be less than credible.
10 However, the court concludes that the ALJ failed to articulate
11 specific, clear and convincing reasons for rejecting this aspect of
12 plaintiff's testimony.
13        In rejecting plaintiff's testimony, the ALJ generally
14 observed that "the objective medical evidence ... does not support
15 the degree of depression or limitations due to vision problems as
16 alleged by the claimant."  (Tr. at 19.)  The ALJ specifically noted
17 that while plaintiff "may occasionally have double vision, records
18 show that the claimant's reports of double vision have decreased over
19 time since his initial surgery."  (Id.)  The ALJ also stated that
20 plaintiff "continues to drive and his physician has not precluded him
21 from driving."  (Id.)  The record, however, actually reflects that
22 even after the November 26, 2002, surgical procedure on his left eye
23 plaintiff continued to experience a variety of problems with his
24 vision.  (Tr. at 120-21.)  Moreover, the record as a whole indicates
25 that plaintiff's ability to drive is much more limited than suggested
26 by the ALJ in his decision.

Specifically, on February 7, 2003, plaintiff's treating physician noted complaints of double vision in the left eye. (Tr. at 118.) According to the physician, "[Visual acuity] is very distorted. [Patient] does not drive. No depth perception. [Left eye] needs frequent rest periods. Does not see in [three dimensions]. Still suffers headaches." (Id.) On September 30, 2003, another treating physician opined that plaintiff has "fine visual acuity" limitations in both eyes as well as depth perception problems and "occasional double vison." (Tr. at 133.) Regarding driving a car, that physician noted that plaintiff only drives locally "because he feels unsafe due to poor depth perception." (Id.) Plaintiff's ability to read was described as "uniocular only." (Id.) It was also noted that plaintiff cannot use a computer for a sustained period, is clumsy on uneven ground and "legally blind in the left eye." (Tr. at 134.) By November 11, 2003, plaintiff "complained that he could not see with his left eye [and] that the right eye vision was getting worse as well." (Tr. at 138.) It was recommended that "he consider using a patch before his left eye or an opaque contact lense to eliminate the diplopia and the symptoms due to the weakened left eye on the best-seeing right eye." (Tr. at 139.) No improvement in vision in the left eye was expected. (Id.) In August of 2004, it was noted that plaintiff "can't see" in the left eye, had "some double vision" in the right eye and his vision was neither improving nor worsening. (Tr. at 161.) His vision was "basically stable." (Id.) In light of this medical evidence, the
/////

court finds that the ALJ mischaracterized the record regarding the extent of plaintiff's vision problems.

In finding plaintiff less than credible, the ALJ also reasoned that plaintiff "may not be having the degree of difficulty with balance and walking that he alleges" because plaintiff "has never been treated for injuries received in a fall and he reports he vacations on a houseboat." (Tr. at 20.)  However, with respect to the houseboat, plaintiff testified that he and his wife "go down and spend some time on [the houseboat] just to kind of get away from things a little bit."  (Tr. at 200.)  Later in the hearing, the following exchange occurred between plaintiff and his attorney:

> Q: Okay, then you said something about your houseboat at Inglebright?
>
> A: Yeah.
>
> Q: Is there any work with [sic] going there?
>
> A: Well, Lorna ended up -- my wife -- doing most of the work because I couldn't paint the ceiling and stuff. I just -- I -- it's bizarre. I can't even do that. That's where I'm just ready to scream or choke somebody. So we just go out there an sit around. I used to go out and read a lot, and I can't read anymore except in just little short spurts.

(Tr. at 201-02.)  In light of this record, it is difficult to understand how the ALJ came to the conclusion that plaintiff "vacations on a houseboat."  Further, the fact that plaintiff has never been treated for injuries suffered in a fall stemming from his vision problems is clearly beside the point.  Plaintiff's difficulty with walking and balance as a result of his condition is well-supported in the record.

14

1         For all of these reasons, the court finds that the ALJ
2 failed to offer specific, clear and convincing reasons for rejecting
3 plaintiff's testimony regarding the severity of his symptoms and
4 their impact on his ability to work.  Accordingly, the Commissioner's
5 decision must be reversed.

6         In light of the errors identified above, it is unnecessary
7 to address the remainder of plaintiff's arguments.  However, the
8 appropriate remedy must be determined.  The decision whether to
9 remand a case for additional evidence or to simply award benefits is
10 within the discretion of the court.  Ghokassian v. Shalala, 41 F.3d
11 1300, 1304 (9th Cir. 1994); Pitzer v. Sullivan, 908 F.2d 502, 506
12 (9th Cir. 1990).  In this regard, the Ninth Circuit has stated:
13 "[g]enerally, we direct the award of benefits in cases where no
14 useful purpose would be served by further administrative proceedings,
15 or where the record has been thoroughly developed."  Ghokassian, 41
16 F.3d at 1304 (quoting Varney v. Sec'y of Health & Human Servs., 859
17 F.2d 1396, 1399 (9th Cir. 1988)).  This rule recognizes the
18 importance of expediting disability claims.  Holohan v. Massanari,
19 246 F.3d 1195, 1210 (9th Cir. 2001); Ghokassian, 41 F.3d at 1304;
20 Varney, 859 F.2d at 1401.  Where, as here, there were no legitimate
21 reasons given for disregarding the examining physician's opinion or
22 plaintiff's testimony, there is no need to remand the case for
23 additional findings.  See Moisa, 367 F.3d at 887 (remanding for award
24 of benefits where the ALJ erroneously rejected plaintiff's subjective
25 pain testimony); Moore v. Comm'r of Soc. Security Admin., 278 F.3d
26 920, 925 (9th Cir. 2002) (remanding for payment of benefits where the

ALJ "improperly rejected testimony [plaintiff's] three examining physicians"); Holohan, 246 F.3d at 1211; Ghokassian, 41 F.3d at 1304 (awarding benefits where the ALJ "improperly discounted the opinion of the treating physician"); Pitzer, 908 F.2d at 506; Winans v. Bowen, 853 F.2d 642, 647 (9th Cir. 1987).

If the opinion of plaintiff's examining physician and plaintiff's own testimony are properly credited, the evidence indicates that plaintiff is unemployable and disabled.  Further, any work he might be able to perform would not amount to substantial gainful activity since it would be intermittent, irregular and subject to frequent interruptions.  See Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989); Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980).  Plaintiff filed his application almost four years ago and no useful purpose would be served by delaying this matter further for additional administrative proceedings.  Therefore, this matter will be remanded with the direction to grant benefits.

**CONCLUSION**

Accordingly, the court HEREBY ORDERS that:

1.  Plaintiff's motion for judgment on the pleadings is granted;

2.  Defendant's cross-motion for summary judgment is denied; and

/////

/////

/////

/////

3. The decision of the Commissioner of Social Security is reversed and this case is remanded with the direction to grant benefits.

DATED: September 20, 2006.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:th
Ddad1\orders.socsec\straka1124.order